UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:09-cv-87-T-26TBM

**09-MC-0036**

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN ꞉ 8 2009

GREGORY C. LANGHAM
CLERK

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT

Relief Defendants.

_____/

## ORDER REAPPOINTING RECEIVER

**WHEREAS**, Plaintiff Securities and Exchange Commission ("Commission") filed an

emergency motion for the appointment of a Receiver over Defendants Scoop Capital LLC and

Scoop Management Inc. ("Defendants"), and Relief Defendants Scoop Real Estate L.P., Valhalla

Investment Partners L.P., Valhalla Management Inc., Victory IRA Fund LTD, Victory Fund

LTD, Viking IRA Fund LLC, Viking Fund LLC and Viking Management ("Relief Defendants"),

with full and exclusive power, duty and authority to: administer and manage the business affairs,

funds, assets, choses in action and any other property of the Defendants and Relief Defendants;

marshal and safeguard all of the assets of the Defendants and Relief Defendants; and take whatever actions are necessary for the protection of the investors; and

     **WHEREAS**, the Commission has made a sufficient and proper showing in support of the relief requested by evidence demonstrating a *prima facie* case of violations of the federal securities laws by the Defendants; and

     **WHEREAS**, the Commission submitted the credentials of Burton W. Wiand to be appointed as Receiver of all of the assets, properties, books and records, and other items of the Defendants and Relief Defendants, including any properties, assets and other items held in the names of the Defendants and Relief Defendants, and the Commission has advised the Court that Burton W. Wiand was prepared to assume this responsibility if so ordered by the Court; and

     **WHEREAS**, Burton W. Wiand was appointed Receiver over the Defendants and Relief Defendants; and

     **WHEREAS**, upon sufficient and proper showing by Burton W. Wiand and, for the protection of the investors and the Receivership Estate, the Court expanded the Receivership to include Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; the Laurel Mountain Preserve Homeowners Association, Inc.; The Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC; and A Victorian Garden Florist, LLC,

     **NOW, THEREFORE, IT IS ORDERED AND ADJUDGED** that Burton W. Wiand is hereby reappointed the Receiver over the Defendants and Relief Defendants and Venice Jet Center, LLC; Tradewind, LLC; Laurel Mountain Preserve, LLC; Laurel Preserve, LLC; the Marguerite J. Nadel Revocable Trust UAD 8/2/07; the Laurel Mountain Preserve Homeowners Association, Inc.; The Guy-Nadel Foundation, Inc.; Lime Avenue Enterprises, LLC; and A Victorian Garden Florist,

LLC (collectively "Receivership Entities"), their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.      Take immediate possession of all property, assets and estates of every kind of the Receivership Entities, whatsoever and wheresoever located belonging to or in the possession of the Receivership Entities, including but not limited to all offices maintained by the Receivership Entities, rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Receivership Entities wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.      Investigate the manner in which the affairs of the Receivership Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including against their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the Receivership Entities; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3

3.      Present to this Court a report reflecting the existence and value of the assets of the Receivership Entities and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Entities;

4.      Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Receivership Entities, and exercising the power granted by this Order, subject to approval by this Court at the time the Receiver accounts to the Court for such expenditures and compensation;

5.      Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshal's Service or a private security firm;

6.      Defend, compromise or settle legal actions, including the instant proceeding, in which the Receivership Entities or the Receiver is a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where the Receivership Entities are a nominal party, where the action does not effect a claim against or adversely affect the assets of the Receivership Entities, the Receiver may file appropriate pleadings in the Receiver's discretion. The Receiver may waive any attorney-client or other privilege held by the Receivership Entities;

7.      Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Receivership Entities and, upon order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

8.    Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging the Receiver's duties;

9.    Have access to and review all mail of the Receivership Entities (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office or address of the Receivership Entities.

**IT IS FURTHER ORDERED AND ADJUDGED** that, in connection with the reappointment of the Receiver provided for above:

10.    The Receivership Entities and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of the Receivership Entities shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Receivership Entities;

11.    All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, the Receivership Entities shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12.    Unless authorized by the Receiver, the Receivership Entities and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Receivership Entities;

13.     The Receivership Entities, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver.  The Receivership Entities and their principals, respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.     The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by the Receivership Entities; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court;

15.     Without prior permission from this Court, during the period of this receivership all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Receivership Entities;

16.     The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to the Receivership Entities;

17.     Title to all property, real or personal, all contracts, rights of action and all books and records of the Receivership Entities and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

18.     Upon request by the Receiver, any company providing telephone services to the Receivership Entities shall provide a reference of calls from any number presently assigned to any of the Receivership Entities to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

19.     Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.     The United States Postal Service is directed to provide any information requested by the Receiver regarding the Receivership Entities, and to handle future deliveries of the mail of the Receivership Entities as directed by the Receiver;

21.     No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

22.     No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence or greater, the Receiver shall not be liable for any loss or damage incurred by the Receivership Entities or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

23.     In the event that the Receiver discovers that funds of persons who have invested in the Receivership Entities have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds; and

24.     This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** in Chambers at Tampa, Florida, on June 3, 2009.

        *s/ Richard A. Lazzara*
        **RICHARD A. LAZZARA**
        **UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record
Arthur G. Nadel, Register No. 50690-018
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida.
By _____
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO.:**

$8.09 cv 000877 T 26$
$TBM$

SECURITIES AND EXCHANGE
COMMISSION,

   Plaintiff,

 v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

   Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC

   Relief Defendants.



_____/

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges and states as follows:

### I. INTRODUCTION

1. The Commission brings this emergency action to halt an ongoing fraud by Arthur

G. Nadel and two investment management companies he controls, Scoop Capital, LLC and

Scoop Management, Inc. ("Defendants"). The fraud concerns six hedge funds: Scoop Real

Estate, L.P, Valhalla Investment Partners, L.P., Victory IRA Fund, Ltd, Victory Fund, Ltd,

Viking IRA Fund, LLC, and Viking Fund, LLC; and two other investment management

companies, Valhalla Management, Inc. and Viking Management. The latter eight entities are collectively referred to as Relief Defendants.

2.      From at least January 2008 through the present, the Defendants, who provide investment advice to Scoop Real Estate, Valhalla Investment Partners, Victory IRA Fund, Victory Fund, Viking IRA Fund, and Viking Fund (collectively the "Hedge Funds") have issued materially false and misleading account statements to the Hedge Funds' investors. The false account statements overstated the value of investments in the Funds by approximately $300 million.

3.      The Defendants have also massively overstated the Hedge Funds' historical investment returns and the value of their assets in account statements provided to investors.

4.      Nadel, the Hedge Funds' principal investment advisor, provided fraudulent balances and values to others associated with the Hedge Funds knowing they would be used to create false investor account statements.

5.      At the same time he was deceiving investors, Nadel maintained secret bank accounts, which only he controlled, in the names of at least two of the Hedge Funds. He recently transferred $1.25 million from the Viking IRA Fund and Valhalla Investment Partners to one of the secret accounts.

6.      By causing the Hedge Funds to issue materially false statements to investors that tremendously exaggerated the value of their investments, the Defendants violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C §78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §240.10b-5.

2

7.      To halt the ongoing fraud, maintain the status quo, and preserve investor assets, the Commission seeks various forms of equitable relief against the Defendants, including a temporary restraining order, preliminary injunctions, permanent injunctions against future violations of the federal securities laws, disgorgement plus pre-judgment interest, and civil penalties.

8.      Based on the ongoing nature of their violations and the scienter the Defendants have demonstrated through their willful and wanton disregard for the federal securities laws, the Defendants have shown they will continue to violate the law unless the Court grants the injunctive and other relief the Commission seeks.

## II. DEFENDANTS AND RELIEF DEFENDANTS

9.      Defendant Nadel, 76, is a resident of Sarasota, Florida and one of the owners of Scoop Capital and Scoop Management. He is the sole officer and director of Scoop Management and the sole managing member of Scoop Capital. At all relevant times, he provided investment advice to the Hedge Funds, was responsible for the Hedge Funds' trading activities, and provided the account values included in investor account statements for the Hedge Funds. Nadel received compensation through the fees charged to the Hedge Funds for management and investment advice.

10.      Defendant Scoop Capital is a Florida limited liability company organized on June 28, 2001, with its principal place of business in Sarasota, Florida. Nadel is the sole managing member of Scoop Capital. Nadel and his wife are the principals of Scoop Capital.

11.      Defendant Scoop Management is a Florida corporation incorporated on April 17, 2001, with its principal place of business in Sarasota, Florida. Nadel is the President, Secretary and a Director of Scoop Management.

3

12.    Relief Defendant Scoop Real Estate is a Delaware limited partnership formed on October 15, 2003. Scoop Capital is its general partner.

13.    Relief Defendant Valhalla Investment Partners is a Delaware limited partnership formed on October 15, 2003. Valhalla Management is its general partner, and its principal place of business is Sarasota, Florida.

14.    Relief Defendant Valhalla Management is a Florida corporation organized on February 16, 1999, with its principal place of business is Sarasota, Florida.

15.    Relief Defendant Victory IRA Fund is a Florida limited partnership formed on April 3, 2003, with its principal place of business in Sarasota, Florida. Scoop Capital is the general partner of Victory IRA Fund.

16.    Relief Defendant Victory Fund is a Florida limited partnership formed on May 1, 2005, with its principal place of business in Sarasota, Florida. Scoop Capital is the general partner of Victory Fund.

17.    Relief Defendant Viking IRA Fund is a Florida limited liability company organized on March 27, 2001, with its principal place of business in Sarasota, Florida. Viking Management is its sole managing member.

18.    Relief Defendant Viking Management is a Florida limited liability company organized on May 21, 2001, with its principal place of business in Sarasota, Florida.

19.    Relief Defendant Viking Fund is a Florida limited liability company organized on March 23, 2001, with its principal place of business in Sarasota, Florida. Viking Management is its sole managing member.

4

## III. JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to Sections 21(d) 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

21.     This Court has personal jurisdiction over the Defendants and Relief Defendants, and venue is proper in the Middle District of Florida, because the Defendants and Relief Defendants' principal places of business are in Sarasota. Additionally, Nadel resides in Sarasota and has conducted the Defendants' and Relief Defendants' business in Sarasota. Thus, the conduct constituting the fraud alleged in this Complaint has occurred in the Middle District.

22.     The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV. FACTS

23.     Nadel and the two other Defendants have managed the Hedge Funds since 1999.

24.     In 2003, Scoop Capital formed Scoop Real Estate to acquire interests in residential, commercial, office and industrial real estate properties. Scoop Capital has been responsible for managing that Hedge Fund's portfolio and its day-to-day operations, with Nadel responsible for its investment decisions.

25.     In 2005, Scoop Capital formed Victory IRA Fund and Victory Fund. The investment objective of these two Funds has been to invest or trade in securities.

26.     The Defendants have offered and sold limited partnership interests in Scoop Real Estate, Victory IRA Fund and Victory Fund through multiple offerings.

5

27.    According to private placement memoranda ("PPMs") for Scoop Real Estate, Victory IRA Fund and Victory Fund, Scoop Capital has been responsible for managing those Hedge Funds' portfolios and their day-to-day operations. Nadel has been responsible for all the Hedge Funds' investment decisions.

28.    The Victory IRA Fund and Victory Fund PPMs tout Scoop Management's proprietary trading systems and extensive market research.

29.    The PPMs state those two Hedge Funds will pay quarterly management fees to Scoop Capital and Scoop Management, based on a percentage of those funds' net assets.

### A. Valhalla Investment Partners, Viking Fund, and Viking IRA Fund

30.    In 1999, Valhalla Management formed Valhalla Investment Partners to invest in and/or trade in securities.

31.    In 2001, Viking Management formed Viking IRA Fund and Viking Fund to invest and/or trade in the securities of medium to large cap companies.

32.    The Defendants have offered and sold limited partnership and membership interests in Valhalla Investment Partners, Viking IRA Fund and Viking Fund through multiple offerings.

33.    According to the PPMs, Viking Management and Valhalla Management were responsible for all of the investment decisions for their respective Hedge Funds. However, the PPMs also state that Viking Management and Valhalla Management rely on the investment advice of Scoop Management, or that the Funds' investments will be made in accordance with trading signals and other principles Scoop Management developed.

34.    More specifically, the PPMs state Scoop Management will provide trading signals, market data, computer investment and trading programs, technical and fundamental

6

research, and entry of trades for the Hedge Funds. Scoop Management also is expected to provide Viking Management and Valhalla Management with office management and technical services in connection with those Funds' operations, including the use of office space, facilities, and bookkeeping.

35.     According to the PPMs, the Hedge Funds will pay Valhalla Management and Viking Management a management and performance fee, and Scoop Management a monthly advisory fee of $5,000. The PPMs also state Valhalla Management and Viking Management will share their management and performance fee with Scoop Management.

**B.  Misrepresentations to the Funds' Investors Concerning the Value of the Funds' Assets**

36.     For at least the last year, the Defendants have materially misrepresented the value of the Hedge Funds' assets to investors. For example, the Hedge Funds' internal books and records – used to provide false account statements to investors – indicate the value of their assets exceeds $300 million. In fact, the actual value of the Hedge Funds' assets is only about $506,000.

37.     As of mid-January 2009, the account values for the six Hedge Funds were as follows: (a) **Victory Fund** – securities worth $1,901.31 and cash of $78,764.37; (b) **Scoop Real Estate** – securities worth $2,119.81 and cash of $122,830.40; (c) **Viking IRA Fund** – securities worth $2,923.58 and cash of $77,025.20; (d) **Viking Fund** – securities worth $917.70 and cash of $65,708.33; (e) **Valhalla Investment Partners** – securities worth $4,413.66 and cash of $16,158.05; and (f) **Victory IRA Fund** – securities worth $2,938.86 and cash of $131,139.52.

38.     Thus, the total value of the Hedge Funds' securities holdings as of January 14, 2009 was only $15,214.92, and the cash on hand was only $491,625.87.

39.    The Defendants have grossly misrepresented to investors the value of their investments in the Hedge Funds by providing them false account statements that Nadel directed.

40.    In particular, one investor from Virginia who invested in the Victory IRA Fund received a statement for October 2008 indicating his investment was valued at $599,551.55, and a November 2008 statement indicating his investment was valued at $602,965.39. This same investor made a second investment in Victory IRA Fund through another account and subsequently received an October 2008 statement indicating this investment was valued at $172,354.07, and a November 2008 statement indicating this investment was valued at $173,335.45. These statements were false because the *total* value of the entire Victory IRA Fund's holdings was only $2,938.86 at the end of October and November 2008.

41.    This same investor also invested in Scoop Real Estate. He received account statements for October 2008 indicating his investment in Scoop Real Estate was valued at $586,862.54, and a November 2008 statement indicating the value of his investment was $590,321.18. These statements were false because Scoop Real Estate's entire holdings were only worth $8,088.35 at the end of October and $198,224.13 at the end of November 2008.

42.    This investor's wife also made two separate investments in the Victory IRA Fund and received statements for October and November 2008 which grossly misrepresented the value of her investments.

43.    She also invested in Victory Fund and received an account statement for November 2008 which misrepresented the value of her investment in this fund as worth $419,824.89. The November 2008 account statement was false because Victory Fund's entire holdings were worth only $91,823.49 at the end of November 2008.

### C. Misrepresentations in the Offer or Sale of the Hedge Funds' Securities

44.     In addition to misrepresenting to the Funds' investors the value of their investments, the Defendants have prepared, approved and disseminated offering materials to prospective investors that materially misstate the Funds' yearly historical returns and the total capital invested in the Funds.

45.     In particular, the offering materials for the Viking Fund, the Viking IRA Fund, and the Victory Fund represent those Funds had approximately $342 million in capital as of November 30, 2008. In fact, the total value of those Funds' assets as of that date was only $963,123.85.

46.     The offering materials also represent that the Funds generated investment returns ranging from 10.97% to 11.82% between January and November of 2008. In fact, these claimed returns were utterly bogus. At least three of the funds lost money on their investments from January through November, and a fourth reported lower returns.

### COUNT I

### Fraud in Violation of Section 10(b) of the Exchange Act and Rule 10b-5

47.     The Commission repeats and realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.     From at least January 2008 through the present, the Defendants, directly or indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly have: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were

made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

49.     By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5.

## COUNT II

### Fraud in Violation of Section 17(a)(1) of the Securities Act

50.     The Commission repeats and realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

51.     From at least January 2008 through the present, the Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstates commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, have knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

52.     By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. §77q(a)(1).

## COUNT III

### Fraud in Violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act

53.     The Commission repeats and realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

54.     From at least January 2008 through the present, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate

commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint have: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

55.     By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§77q(a)(2) and 77q(a)(3).

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests the Court:

### I. Declaratory Relief

Declare, determine and find that the Defendants committed the violations of the federal securities laws alleged in this Complaint.

### II. Permanent Injunction

Issue a Permanent Injunction, enjoining the Defendants, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5.

### III. Asset Freeze

Issue an Order freezing the assets of all Defendants and Relief Defendants until further Order of the Court.

### IV.  Appointment of a Receiver

Issue an Order appointing a Receiver over all assets held in the name of the Defendants (other than Nadel) and Relief Defendants to (1) preserve the status quo, (2) ascertain the financial condition of each of the Defendant and Relief Defendant entities, (3) prevent further dissipation of the property and assets of each of the Defendant and Relief Defendant entities, to prevent loss, damage and injury to investors, (4) preserve the books, records and documents of each of these Defendant entities and Relief Defendant entities, and (5) be available to respond to investor inquiries.

### V.  Disgorgement

Issue an Order directing the Defendants and the Relief Defendants to disgorge all profits or proceeds that they received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

### VI.  Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### VII.  Further Relief

Grant such other and further relief as may be necessary and appropriate.

### VIII.  Retention of Jurisdiction

Further, the Commission respectfully requests the Court to retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

January 21, 2009

Respectfully submitted,

By:

Scott Masel
Senior Trial Counsel
Florida Bar No. 0007110
Telephone:  (305) 982-6398
Facsimile:  (305) 536-4154
masels@sec.gov
*Lead and Trial Counsel*

Andre Zamorano
Senior Counsel
Florida Bar No. 0967361
Telephone: (305) 982-6324
Facsimile: (305) 536-4154
zamoranoa@sec.gov.

Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL  33131

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida.

Deputy Clerk

13